DISTRICT OF OREGON
**F I L E D**
September 17, 2010
Clerk, U.S. Bankruptcy Court

Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
| | ) | No. 10-30580-rld7 |
| PAUL DOUGLAS KNIGHT, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ALLAN F. KNAPPENBERGER, | ) | Adv. Proc. No. 10-03092-rld |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL DOUGLAS KNIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On August 31, 2010, I entered a Judgment of Dismissal ("Judgment") in this adversary proceeding ("Adversary Proceeding"), based upon the Adversary Proceeding pleadings, the evidence presented at the August 2, 2010 trial ("Trial"), my taking judicial notice of docketed documents in the debtor defendant's ("Mr. Knight") chapter 7 bankruptcy main case, Case No. 10-30580-rld7 ("Main Case"), and plaintiff's ("Mr. Knappenberger") arguments at the Trial. Mr. Knight did not appear and

Page 1 - MEMORANDUM OPINION

did not present any evidence at the Trial.

On September 7, 2010, Mr. Knappenberger filed a timely Motion Requesting an Amendment to Court's Ruling and Memorandum of Law ("Motion to Amend Judgment"), effectively requesting that I reverse the Judgment in favor of Mr. Knight and enter a judgment in favor of Mr. Knappenberger on his claim that his state court judgments against Mr. Knight should be excepted from Mr. Knight's bankruptcy discharge under 11 U.S.C. § 523(a)(6).[1]

Although Mr. Knappenberger cites Rule 8002(b) as authority for the Motion to Amend Judgment, I interpret the Motion to Amend Judgment as a motion pursuant to Civil Rule 59(e), applicable in bankruptcy cases under Rule 9023. Rule 8002(b) is implicated to the extent that it recognizes the filing of a motion of the type represented by the Motion to Amend Judgment as tolling the time for filing a Notice of Appeal until the entry of an order disposing of the Motion to Amend Judgment.

This Memorandum Opinion constitutes my findings of fact and conclusions of law, which I make pursuant to Civil Rule 52(a), applicable in this Adversary Proceeding pursuant to Rule 7052. I have jurisdiction to decide the Motion to Amend Judgment and to enter a final judgment in the Adversary Proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), and 157(b)(2)(I).

### Factual Background

The relevant facts in this Adversary Proceeding are not in

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

Page 2 - MEMORANDUM OPINION

dispute.  At the Trial, I took judicial notice of the docket and documents filed in Mr. Knight's Main Case for purposes of confirming and ascertaining facts not reasonably in dispute.  Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006).

Mr. Knight filed his chapter 7 petition on January 27, 2010. Main Case Docket No. 1.  At the time of his bankruptcy filing, Mr. Knight was unemployed and was receiving unemployment compensation benefits of $172.50 a month.  Main Case Docket No. 2.  Mr. Knight's schedules reflected that he owned no real property, and his personal property assets, with an aggregate value of $2,480, consisted of household goods and furnishings, books, clothing and a dog, all of which were claimed as exempt.  Main Case Docket No. 1.  Mr. Knight's schedules further reflect that he did not own a car.  Id.  The chapter 7 trustee filed a "No Asset" report on April 30, 2010, and Mr. Knight's discharge was entered on May 3, 2010.  Main Case Docket Nos. 10 and 11.  No adversary proceedings were filed to deny Mr. Knight a discharge in bankruptcy, and the Adversary Proceeding was the only adversary proceeding filed to except a debt from Mr. Knight's discharge.  See Main Case docket and particularly, Docket No. 8.

In his Adversary Proceeding complaint, as amended ("Complaint"), Mr. Knappenberger stated a single claim for relief, asserting that a state court judgment that he obtained against Mr. Knight for $1,634.39 plus costs of $471.20, plus interest at 9%, and a supplemental judgment in the amount of $20 per day, or $600 a month, plus costs of $687.03, plus interest at 9%, should be excepted from Mr. Knight's discharge under § 523(a)(6), as a debt for willful and malicious

injury to Mr. Knappenberger by Mr. Knight. See Adversary Proceeding Docket Nos. 1 and 30. In his Answer to the Complaint, Mr. Knight denied that his conduct that was the subject of the Complaint was willful and malicious for purposes of an exception to his discharge. See Adversary Proceeding Docket No. 9.

In his Trial Memorandum, Mr. Knappenberger states that he obtained a money judgment against Mr. Knight in state court. See Adversary Proceeding Docket No. 36, at p. 1. Mr. Knappenberger does not state what the money judgment was for. See Adversary Docket No. 36. In his schedules, Mr. Knight listed an undisputed debt to Mr. Knappenberger in the amount of $1,634.39 for "Unpaid Attorney Fees Case No. 0711-12788" in Schedule F. See Main Case Docket No. 1. However, Mr. Knappenberger argues that because Mr. Knight did not appear for two scheduled judgment debtor examinations prepetition, the supplemental judgment that Mr. Knappenberger obtained in state court, again prepetition, for sanctions awarded against Mr. Knight as a result of his repeated failures to appear evidences the willful and malicious injury visited upon him by Mr. Knight and supports his claim for an exception to discharge under § 523(a)(6). Id.

As previously noted, Mr. Knight did not appear at the Trial. Mr. Knappenberger stated at the Trial that he had received a letter from Mr. Knight's mother advising that Mr. Knight had been imprisoned for a short term and would enter rehab upon his release.

Mr. Knappenberger submitted exhibit notebooks for the Trial including Exhibits 1-8, all of which were admitted without objection. In addition, I admitted Exhibits 9 and 10 at the Trial.

Page 4 - MEMORANDUM OPINION

Exhibit 1 is the General Judgment ("General Judgment") entered in favor of Mr. Knappenberger and against Mr. Knight by default on January 22, 2008. Exhibits 2 and 3 are Mr. Knappenberger's two separate motions, affidavits and orders for judgment debtor examinations of Mr. Knight. Exhibit 4 is the state court's Order to Show Cause in Mr. Knappenberger's case against Mr. Knight, addressed to "Defendant, RICHARD MILLER" (?), to appear and explain why he should not be held in contempt for failure to appear at the scheduled judgment debtor examinations. Exhibit 5 is the Affidavit of Service of the Order to Show Cause on Mr. Knight. Exhibit 6 is the state court's Supplemental Judgment ("Supplemental Judgment") for sanctions against Mr. Knight for failing to appear at the Order to Show Cause hearing. Exhibit 7 apparently is a service copy of Exhibit 2. Exhibit 8 is the state court's Order to Show Cause addressed to Mr. Knight. Exhibit 9 ("Exhibit 9 Letter") is a letter sent by Mr. Knight to Mr. Knappenberger after Mr. Knappenberger had sued Mr. Knight in state court but before Mr. Knappenberger had obtained the General Judgment. Mr. Knappenberger quotes from the Exhibit 9 Letter in the Memorandum of Law included in the Motion to Amend Judgment. Omitted from the quoted material is an offer from Mr. Knight to settle Mr. Knappenberger's claim for $700 and a reference to Mr. Knappenberger's status as "disbarred."[2] Mr. Knappenberger stated at the Trial that he rejected Mr. Knight's offer. The language of the Exhibit 9 Letter is colorful and tends to indicate that relations between the

---

[2] On August 4, 2008, the Oregon Supreme Court suspended Mr. Knappenberger from the practice of law for two years. In re Allan F. Knappenberger, 344 Or. 559 (2008).

Page 5 - MEMORANDUM OPINION

parties were anything but cordial as Mr. Knappenberger pursued his collection efforts in state court, but the Exhibit 9 Letter is essentially cumulative in characterizing the relationship between the parties as a dogged debt collector pursuing a bitter and impecunious debtor, feeling cornered. Exhibit 10 is a certified mail letter from Mr. Knappenberger to Mr. Knight, dated April 23, 2009, advising Mr. Knight of the second scheduled judgment debtor examination, noting that Mr. Knight did not attend the first scheduled judgment debtor examination, and further advising that if Mr. Knight did not attend the second scheduled judgment debtor examination, Mr. Knappenberger would seek contempt sanctions against him.

After admitting Mr. Knappenberger's exhibits and listening to his arguments at the Trial, I made oral findings and conclusions on the record and found ultimately that Mr. Knappenberger had not met his burden of proof to prevail on his § 523(a)(6) claim against Mr. Knight. Thereafter, the Judgment was entered, and Mr. Knappenberger filed his Motion to Amend Judgment.

### Discussion

In his Motion to Amend Judgment, Mr. Knappenberger does not argue that any of my factual findings at the Trial were clearly erroneous. Rather, Mr. Knappenberger argues that my legal conclusions from the facts in the evidentiary record were wrong and accordingly argues that I should reverse the Judgment. I disagree for the following reasons.

A complete analysis of the legal issues presented in this case requires a return to first principles. A primary objective of the

Page 6 - MEMORANDUM OPINION

Bankruptcy Code is to provide a fresh start for debtors overburdened by debts that they cannot pay. As stated by the Ninth Circuit in Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.), 645 F.2d 794, 798 (9th Cir. 1981), quoting from Williams v. U.S. Fidelity & Guar. Co., 236 U.S. 549, 554-55 (1915):

> One of the primary goals of the Bankruptcy [Code] is "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."

See Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 754-55 (9th Cir. 1985). No issues have been raised in this Adversary Proceeding about Mr. Knight's veracity.

Accordingly, I start from the proposition that the exception to discharge provisions of the Bankruptcy Code are to be interpreted strictly in favor of debtors, such as Mr. Knight, and the plaintiff, such as Mr. Knappenberger, in exception to discharge litigation bears the burden of proof to establish each element of his claim by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279 (1991); First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986).

Section 523(a)(6) provides an exception to the debtor's discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court analyzed § 523(a)(6) in Kawaauhau v. Geiger, 523 U.S. 57 (1998).

> The word "willful" in [523](a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.... Moreover, as the Eighth Circuit observed, the

Page 7 - MEMORANDUM OPINION

[523](a)(6) formulation triggers in the lawyer's mind
                the category "intentional torts," as distinguished
                from negligent or reckless torts.

Id. at 61 (emphasis in original).

   In Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992), the Ninth Circuit stated:

> It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6). (citations omitted) An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct. (citations omitted)

These principles were forcefully restated by the Ninth Circuit in Lockerby v. Sierra, 535 F.3d 1038, 1040-41 (9th Cir. 2008):

> We begin from the proposition that tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6).... [Petralia v. Jercich (In re Jercich), 238 F.3d 1202 (9th Cir. 2001)] holds that liability for a breach of contract need not be wholly independent from liability for the tort in order for the tortious conduct to give rise to nondischargeability under § 523(a)(6).... Jercich rejects a definition of tortious conduct that would permit a finding of nondischargeability under § 523(a)(6) only "if the conduct at issue would be tortious even if a contract between the parties did not exist."... But far from doing away with the tortious conduct requirement, Jercich affirms it.... Contrary to Lockerby's argument, conduct is not tortious under § 523(a)(6) simply because injury is intended or "substantially likely to occur," but rather is only tortious if it constitutes a tort under state law.

   The General Judgment is nothing more than a default money judgment for unpaid attorney fees, awarding damages for a breach of a contract obligation. See Exhibit 1. As such, as a matter of law, under principles embraced by the Ninth Circuit in decisions from Riso and Jercich through Lockerby, it does not support an exception to discharge

Page 8 - MEMORANDUM OPINION

judgment against Mr. Knight under § 523(a)(6).

The Supplemental Judgment is different. It awards remedial sanctions for Mr. Knight's "willful contempt of court" for failing to appear at two scheduled judgment debtor examinations. However, it must be examined in terms of the elements required to establish a claim for relief under § 523(a)(6).

The standards for willfulness and maliciousness under § 523(a)(6) are distinct. In order to find that an injury was "willful," I must find that the debtor acted either with a subjective intent to harm or a subjective belief that harm was substantially certain to result from his conduct. Carillo v. Su (In re Su), 290 F.3d 1140, 1144-46 (9th Cir. 2002); and In re Jercich, 238 F.3d 1202.

"Malice" concerns "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Murray v. Bammer (In re Bammer), 131 F.3d 788, 791 (9th Cir. 1997) (citing In re Cecchini, 780 F.2d 1440, 1443 (9th Cir. 1986)). Also see In re Su, 790 F.3d at 1146-47.

Under the Supplemental Judgment, Mr. Knappenberger was awarded costs of $687.03 and "$20.00 per day or $600.00 per month" until Mr. Knight appeared for a judgment debtor examination. See Exhibit 6, at p. 2. In his prayer for relief in the Complaint, Mr. Knappenberger requests that those amounts, plus 9% interest (the Oregon state general judgment rate under ORS § 82.010(2)), be excepted from Mr. Knight's discharge "until paid." If I granted that prayer, the subject amounts plus simple interest over one year would accumulate to a debt of $8,796.86 in relation to an uncontested unpaid debt for legal services of $1,634.39,

Page 9 - MEMORANDUM OPINION

that has been discharged.

Mr. Knappenberger primarily relies on the decision of the Eighth Circuit in Siemer v. Nangle (In re Nangle), 274 F.3d 481 (8th Cir. 2001), as support for his arguments for reversal in the Motion to Amend Judgment. The underlying causes of action in the Nangle case were fundamentally tortious, alleging violations of federal debt collection statutes and Illinois consumer fraud statutes. Id. at 483.[3] The jury found generally in favor of the plaintiff, Ms. Siemer, and awarded her punitive damages. Id.

Ms. Siemer registered her judgment and filed a state court motion to compel Mr. Nangle to produce documents disclosing his assets. Id. at 484. An order was entered granting the motion. After Mr. Nangle failed to comply with the order, the state court found him in contempt and imposed what it characterized as a "compensatory fine" against him. Id.

The Eighth Circuit concluded that the contempt order established Mr. Nangle's "willful and malicious" conduct for purposes of § 523(a)(6) in the circumstances of the case before it. The state court specifically had found that Mr. Nangle's conduct was "willful" and that his actions were "designed to interfere with [Ms. Siemer's] efforts to collect the judgment against" Mr. Nangle. Id. However, the Eighth

---

[3] Ms. Siemer's state court judgment included the following: "(1) Mental Distress, Embarrassment, Shame, & Humiliation: $6,000.00; (2) Deprivation of the Use of Property: $1,000.00; (3) Exemplary Damages: $20,000.00; (4) Attorney's Fees: $12,410.00; (5) Costs: $1,313.32; and (6) Attorney's Fees on Appeal: $2,118.37." Siemer v. Nangle (In re Nangle), 281 B.R. 654, 656 (BAP 8th Cir. 2002).

Page 10 - MEMORANDUM OPINION

Circuit specifically declined to find that failure to comply with a court order constituted willful and malicious conduct as a matter of law. Id.

In this case, the Supplemental Judgment includes a finding that Mr. Knight's failures to appear for scheduled judgment debtor examinations were willful. However, the state court made no findings as to Mr. Knight's intent in failing to appear. See Exhibit 6.

There is ample evidence in the record before me to establish that Mr. Knight was given notice of the scheduled judgment debtor examinations and the Order to Show Cause hearing before the state court. He did not appear at any of those proceedings–just as he failed to appear at the Trial. As I stated orally at the Trial, Mr. Knight's continued failures to appear at scheduled court proceedings apparently were willful, at least in the commonly accepted sense of the term "willful," and have compounded the problems that Mr. Knight has faced in his dealings with Mr. Knappenberger, the state court and this court. I do not condone Mr. Knight's repeated failures to appear for scheduled proceedings. However, based on the record in this Adversary Proceeding, I cannot find that Mr. Knight's failures to appear for judgment debtor examinations in Mr. Knappenberger's state court case establish Mr. Knight's subjective intent to harm Mr. Knappenberger or Mr. Knight's subjective belief that harm was substantially certain to result to Mr. Knappenberger from his conduct.

The Exhibit 9 Letter indicates that Mr. Knight did not like Mr. Knappenberger or his collection tactics, and Mr. Knight would not make it easy for Mr. Knappenberger to collect his unpaid fees if he did not accept Mr. Knight's settlement proposal included in the Exhibit 9 Letter.

However, the Exhibit 9 Letter does not indicate where Mr. Knight would come up with the funds to pay a settlement, and all of the evidence I have from Mr. Knight's chapter 7 schedules is that Mr. Knight had no nonexempt assets available to pay either the General Judgment or the Supplemental Judgment. As I stated at the Trial, you cannot collect a judgment from an empty sack.

At all times relevant to Mr. Knappenberger's state court lawsuit against Mr. Knight, Mr. Knappenberger was proceeding pro se and was not authorized to practice law. Under the circumstances, Mr. Knight had no reason to know that his failures to appear for judgment debtor examinations would result in any financial injury to Mr. Knappenberger. Accordingly, while I agree with, and am bound by, the state court's conclusion that Mr. Knight's failures to appear for the two scheduled judgment debtor examinations were "willful," I do not find that Mr. Knappenberger has met his burden of proof to establish "willfulness" under Ninth Circuit standards for purposes of obtaining an exception to discharge judgment against Mr. Knight under § 523(a)(6).

With respect to "malice," while I am prepared to find, as I stated at the Trial, that Mr. Knight's failures to appear for the scheduled judgment debtor examinations in Mr. Knappenberger's state court lawsuit against him were intentional, wrongful and without just cause or excuse, I cannot find from the record before me that they necessarily caused injury to Mr. Knappenberger. There is no evidence in the record that in the absence of a settlement, as proposed in the Exhibit 9 Letter in the early stages of Mr. Knappenberger's state court litigation against Mr. Knight, Mr. Knappenberger ever could have collected any amount of the

General Judgment or the Supplemental Judgment from Mr. Knight. The schedules filed by Mr. Knight under penalty of perjury with his bankruptcy petition, and never challenged, reflect that he owned fully exempt personal property valued at less than $2,500 in the aggregate, including his dog. Further, at the time of his bankruptcy filing, Mr. Knight was unemployed, and there is no evidence in the record that he was employed at the time that Mr. Knappenberger obtained the General Judgment or at any time thereafter. As a result, I reiterate my finding at Trial that Mr. Knappenberger did not meet his burden of proof to establish malice to support an exception to discharge judgment against Mr. Knight under § 523(a)(6).

In these circumstances, Mr. Knappenberger is seeking to obtain an exception to discharge judgment against Mr. Knight that would make Mr. Knight his economic slave in perpetuity for failure to pay a legal services bill for $1,634.39. Mr. Knappenberger has failed to establish that § 523(a)(6) excepts Mr. Knight's debt to him from discharge. Mr. Knappenberger failed to prove that Mr. Knight intended to injure him, which is an element that must be proved to establish "willful" injury, when Mr. Knight failed to appear at his scheduled judgment debtor examinations. Mr. Knappenberger also failed to prove that the injury was "malicious"–the evidence did not establish that Mr. Knight's conduct necessarily caused injury. I will leave the Judgment in place. I will enter a separate order denying the Motion to Amend Judgment.

###

cc: Allan F. Knappenberger
Paul Douglas Knight

Page 13 - MEMORANDUM OPINION